UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| HANNAH CLARK, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil. No. 3:21-cv-00026-GFVT |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| FRANKLIN COUNTY, KENTUCKY, *et al.*, | ) **ORDER** |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' Motion to Dismiss. [R. 6.] In late 2020, the Defendants—Franklin County and various county officers—engaged in a car chase that resulted in the Plaintiffs' arrest. [R. 1.] The Plaintiffs brought this action alleging the Defendants' conduct during and surrounding the arrest violated state and federal law. *Id.* The Defendants argue this action should be dismissed because they are entitled to qualified immunity and the Plaintiffs insufficiently stated their claims. [R. 6-1.] For the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** the Defendants' Motion [R. 6.]

**I**

On September 20, 2020, the Plaintiffs were passengers in a vehicle driven by Delano Washington. [R. 1 at 3.] The Defendants, Franklin County and some of its officers, as well as City of Frankfort officers, who are not Defendants, pursued Washington's vehicle. *Id.* The vehicle was eventually stopped, Washington voluntarily exited, and City of Frankfort officers arrested him. *Id.* Defendant Ray, a Franklin County Deputy, then "viciously yank[ed] [the Plaintiffs] from the vehicle and [slung] them to the ground." *Id.* Defendant Doty, a Franklin

County Sergeant, was also present on the scene and allegedly "kneed Washington in the face" while Ray was engaging with the Plaintiffs, though Washington is not a Plaintiff in this matter. *Id.* The Plaintiffs state they were not threatening, resisting, or attempting to flee the officers. *Id.* at 4. The Plaintiffs further claim that Defendants Franklin County and Sheriff Quire knew that Defendant Ray was ill-equipped to serve as a police officer before his employment began and throughout his employment with the department. *Id.* at 4-5. After the incident, the Plaintiffs allege these Defendants conducted a "sham investigation" of Ray that absolved him of wrongdoing. *Id.* at 5.

The Plaintiffs brought this action against Defendants Ray, Doty, Quire, and Franklin County. They raise four distinct causes of action: (1) constitutional violations under § 1983 against all Defendants, (2) negligence and gross negligence against the individual Defendants, (3) assault and battery against Defendant Ray, and (4) abuse of public office under KRS §§ 446.070, 522.010 against Defendants Quire and Doty. *Id.* at 6. The Defendants now move to dismiss the action, claiming they are immune from liability and that the Plaintiffs have failed to state a claim. [R. 6.] The matter is now ripe for review.[1]

## II

The Defendants' Motion to Dismiss is brought pursuant to Rule 12(b)(6), which tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as

---

[1] The Plaintiffs submitted a video of the incident as an exhibit to their Response to the Defendants' Motion to Dismiss. [R. 7-1; R. 8.] The Defendants "vehemently object" to this admission as inappropriate at this stage of the litigation. [R. 10 at 2, n.1.] The Court agrees. Generally, matters outside of the pleadings cannot be considered when resolving a motion to dismiss. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). There are some exceptions to this rule, including an exhibit attached to a motion to dismiss that is referenced in the Complaint. *Id.* It does not appear this exception applies when the exhibit is attached to the plaintiff's *response* to the Motion to Dismiss. Therefore, to avoid the risk of converting this ruling into a summary judgment order, the Court will not consider the tendered exhibit at this stage. *See* Fed. R. Civ. P. 12(d).

true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

The Defendants' Motion to Dismiss is largely based on their assertion that they are each entitled to qualified immunity. [*See generally* R. 6-1; R. 10.] However, the court's "general preference" is to not consider qualified immunity at the motion to dismiss stage. *See Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (finding that it is the "general preference" not to resolve a case on qualified immunity grounds at the motion to dismiss stage because "the precise factual basis for the plaintiff's claim or claims may be hard to identify"). This preference can be overcome, allowing dismissal based on qualified immunity "when the complaint establishes the defense." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020). Because the Defendants raise qualified immunity as a defense, the complaint must allege facts supporting a violation of a

clearly established constitutional right for the Plaintiffs to proceed to discovery on that claim. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

A

Count I, brought pursuant to 42 U.S.C. § 1983, alleges the Defendants violated the Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments. [R. 1.] The Fourth Amendment § 1983 claims are for use of excessive force during the incident. The Fourteenth Amendment claims are for a deprivation of due process by some Defendants' subsequent investigation into Ray's conduct. Such allegations are properly brought under § 1983.

Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Because the Defendants raise qualified immunity as a defense to these claims, the complaint must establish a violation of a right that was clearly established. *Moseley*, 790 F.3d at 653.

1

The first portion of the Plaintiffs' § 1983 claim is brought under the Fourth Amendment. This claim is based on violations by each of the Defendants of the Plaintiffs' right to be free from excessive force. The Fourth Amendment protects a person who has yet to be convicted of a criminal offense from use of excessive force. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). This claim is brought against each of the Defendants, and each claims they are entitled to

qualified immunity. [R. 1 at 6; R. 6-1 at 4-12.] The second qualified immunity prong—whether the violated right was clearly established—is the same for each of the Defendants. Though the Defendants are all very differently situated, necessitating the use of different theories of liability under § 1983, the same underlying right is at issue.

There is a clearly established constitutional right to be free from excessive force during an arrest. *Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015). The complaint states this right was violated when Defendant Ray, with his handgun drawn, "viciously yank[ed] [the Plaintiffs] from the vehicle and [slung] them to the ground," while the Plaintiffs presented no threat and were not resisting or fleeing. [R. 1 at 3-4.] More than six years ago, the Sixth Circuit held "pulling a compliant detainee out of her car and throwing her to the ground in the process of handcuffing her is clearly established excessive force." *Brown*, 779 F.3d at 419. At the time of the incident, the Plaintiffs had a clearly established right not to be subjected to Defendant Ray's conduct. Accordingly, the Plaintiffs' Fourth Amendment § 1983 claims can proceed if the complaint establishes the Defendants are each individually liable for a constitutional violation.

a

The Defendants argue the Plaintiffs cite no facts establishing that Defendant Quire committed a constitutional violation. [R. 6-1 at 6-7.] In response to this argument, the Plaintiffs state they would not object to dismissing their § 1983 claims against Defendants Quire and Franklin County without prejudice if they are permitted to conduct discovery and reinstate those claims if discovery supports them. [R. 7 at 6.] The Defendants unsurprisingly object to this and request these claims be dismissed *with* prejudice. [R. 10 at 3.]

The Plaintiffs' proposed procedural mechanism does not exist. Though they cite to Fed. R. Civ. P. 54(b), they do not present, and the Court is unaware of, any time a court has used that

rule to allow dismissal of a claim without prejudice, discovery on that claim, and subsequent reinstatement of the claim depending on the outcome of discovery. Further, it is unclear what tangible difference would exist between this approach and merely denying the Defendants' Motion to Dismiss these claims (other than the need to later file an additional motion to reinstate the dismissed claim). Just as "there is no provision in the Federal Rules for reinstatement of a complaint against a party after voluntary dismissal," there does not appear to be a provision for reinstatement of a voluntarily dismissed claim. *Gilbert v. Hambrose Leasing*, No. 93-2431, 1995 U.S. App. LEXIS 2226, at *5 (6th Cir. Jan. 27, 1995). The Court declines to dismiss these claims without prejudice on the Plaintiffs' proposed conditions. Instead, it will determine whether the complaint plausibly alleges Defendant Quire violated the Plaintiffs' Fourth Amendment rights.

The Plaintiffs are pursuing their Fourth Amendment § 1983 claim against Quire under a supervisory liability theory. [*See* R. 1 at 5; R. 7 at 6.] Supervisory liability under § 1983 requires more than mere *respondeat superior*; the supervising defendant must have "at a minimum . . . implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Supervisory liability must be "based on active unconstitutional behavior," not a "mere failure to act." *Id.* (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)). There can be no supervisory liability without underlying unconstitutional conduct by a subordinate officer. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006).

As will be explained below, the Plaintiffs have stated a plausible claim that Defendant Ray violated their constitutional rights, so a sufficient allegation of the requisite underlying unconstitutional conduct is present. *See infra* II.A.1.c. The complaint asserts Defendant Quire is

6

liable for that conduct because he knew Defendant Ray "overreacted to events, was violent, used unnecessary and excessive force," and more. [R. 1 at 5.] The Defendants characterize these allegations as mere conclusions. [R. 6-1 at 5-7.] The Court disagrees. The Plaintiffs are not required to point to specific incidents in which Defendant Ray overreacted or used excessive force in their Complaint. Knowing an officer was violent and had a history of using excessive force but continuing to employ him and allow him to engage with the public would expose Quire to more than mere supervisory liability. These allegations, if proven to be true, could support a claim that Defendant Quire at least "implicitly authorized" such conduct. *See McLaurin v. Chapman*, 1998 U.S. App. LEXIS 8529, *4 (6th Cir. 1998) (considering whether sufficient evidence had been presented to show supervisors were aware of their subordinate's violent tendencies to expose them to supervisory liability at the *summary judgment* stage); *Harris v. Goins*, 156 F. Supp. 3d 857, 863 (E.D. Ky. 2015). The Plaintiffs stated a plausible Fourth Amendment § 1983 supervisory liability claim against Defendant Quire, so the claim survives the Defendants' Motion to Dismiss.

**b**

Next, the Defendants move to dismiss the Plaintiffs' excessive force claim against Defendant Doty. Defendant Doty's direct involvement in the incident, as outlined by the Plaintiffs, is limited to an alleged interaction with the vehicle's driver, who is not a party. [R. 1 at 3.] In their Response, the Plaintiffs clarify this claim is based on failure to intervene and supervisory liability theories. [R. 7 at 4-5.]

The Plaintiffs' failure to intervene theory requires facts establishing Doty "observed or had reason to know that the excessive force would be or was being used" and had the "means to prevent the harm." *Wright v. City of Euclid*, 962 F.3d 852, 872 (6th Cir. 2020). The Defendants

correctly point out that the complaint itself negates this theory of liability. [R. 6-1 at 8.] It states that while Defendant Ray was allegedly using excessive force against the Plaintiffs, Defendant Doty "simultaneously" "kneed Washington in the face." [R. 1 at 3.] They further state Defendant Doty "was engaged in his own misconduct" and "*thus*" failed to intervene to prevent Ray's conduct. *Id.* at 4. By stating Doty did not intervene because he was otherwise engaged, the Plaintiffs fail to allege facts showing Defendant Doty knew or should have known Defendant Ray was using excessive force. Accordingly, there is no showing that Defendant Doty violated the Plaintiffs' constitutional rights by failing to intervene.

On the other hand, the Plaintiffs' supervisory liability theory is well-founded. The complaint states that Defendant Doty, Ray's superior officer, knew he "overacted to events, was violated, used unnecessary and excessive force," and more. [R. 1 at 5.] As was true for the supervisory liability claim against Defendant Quire, these allegations support a plausible claim that Defendant Doty "implicitly authorized" such conduct. *See McLaurin*, 1998 U.S. App. LEXIS 8529 at *4. The Plaintiffs' supervisory liability claim against Defendant Doty survives the Defendants' Motion to Dismiss.

c

The Plaintiffs' § 1983 claim against Defendant Ray is for a direct violation of their constitutional right to be free from excessive force. [R. 1; R. 7 at 2-4.] Whether an officer's use of force was excessive is determined by an inquiry into the objective reasonableness of the force in light of the facts and circumstances. *Dunigan v. Noble*, 390 F.3d 486, 493 (2004) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

The complaint alleges that Defendant Ray used excessive force against the Plaintiffs by "viciously yanking" them out of the vehicle and "slinging" them to the ground. [R. 1 at 3.] The

8

Plaintiffs further assert that they were not "actively or passively resist[ing]" and were holding their hands in the air. *Id.* at 4. The Defendants take issue with the Plaintiffs' reliance on their innocence and that they did not pose a threat to Defendant Ray at the time of the incident. [R. 6-1 at 10.] They argue this uses the "20/20 vision of hindsight," which is not the appropriate lens through which to determine whether the conduct was reasonable. *Id.* While this is true as to the Plaintiffs' innocence, their lack of threat, resistance, or flight risk are all relevant factors in the reasonableness inquiry. *Dunigan*, 390 F.3d at 493.

Accepting the allegations in the complaint as true, the Plaintiffs have stated a plausible claim for use of excessive force in violation of the Fourth Amendment. An officer uses excessive force when they throw someone from a car to the ground when that person was compliant throughout the stop. *Brown*, 779 F.3d at 418. The Plaintiffs' compliance and lack of threat or flight risk would make this degree of force objectively unreasonable in light of the circumstances. *See Dunigan*, 390 F.3d at 493. Accordingly, the Plaintiffs' Fourth Amendment § 1983 claim against Defendant Ray survives the Defendants' Motion to Dismiss.

**d**

Finally, the Plaintiffs bring a § 1983 claim against Franklin County. As an initial matter, the Plaintiffs state, like they did for Defendant Quire, that they would not object to dismissal of this claim without prejudice if they could conduct discovery on the claim and reinstate it later. [R. 7 at 6.] The Court explained above that this is not a viable procedural mechanism, so it declines to dismiss this claim without prejudice on the Plaintiffs' stated conditions.

Franklin County can be liable for Defendant Ray's conduct under the theory of municipal liability. A municipality can be held liable if a constitutional violation was a result of its policy or custom. *Burgess*, 735 F.3d at 478 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694

9

(1978)).  A policy or custom can be established by: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

Like their claim against Defendant Quire, the Plaintiffs cite Franklin County's knowledge that Defendant Ray was violent, violated policy in the past, and more. [R. 1 at 4-5.]  This allegation, if proven true, could support a claim that Franklin County failed to supervise or train its officers.  Knowingly hiring and employing an officer predisposed to using excessive force plausibly establishes the County was deliberately indifferent to the rights of those it is charged to protect.  *See Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996); *Isom v. O'Briwn*, K88-136 CA8, 1989 U.S. Dist. LEXIS 17781, *14-15 (W.D. Mich. May 30, 1989).  By alleging Franklin County knew Defendant Ray was ill-equipped to be an officer, the Plaintiffs have stated a plausible § 1983 claim for a violation of their Fourth Amendment rights against the County.

**2**

The Plaintiffs' § 1983 claim is also predicated on an alleged violation of their Fourteenth Amendment right to due process. [R. 1 at 5-6.]  They claim Franklin County and Defendant Quire's "sham investigation" into Defendant Ray's conduct during the incident denied them their due process rights.  The Defendants do not address this claim in their motion to dismiss.  Though they argue Defendants Quire and Franklin County are entitled to qualified immunity, they defend against supervisory and municipal liability for the Plaintiffs' Fourth Amendment excessive force claim. [R. 6-1 at 5-7, 11-12.]  No argument is presented regarding the investigation and whether the Plaintiffs stated a plausible due process claim or whether Quire and Franklin County would be immune.  Accordingly, the due process portion of Count I will not be dismissed.

10

**B**

The Defendants also move to dismiss the Plaintiffs' state law claims. They again largely raise qualified immunity in their defense, though for these claims they assert they are protected by state qualified immunity. Again, the Court will only dismiss a claim based on qualified immunity if the complaint itself establishes the existence of the defense. *Siefert*, 951 F.3d at 761. To do so, the complaint must establish the official negligently performed a discretionary act, in good faith, within the scope of their authority. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

**a**

Count Two raises a claim against the individual defendants (Quire, Ray, and Doty) for negligence and gross negligence. First, the Defendants object to the Plaintiffs' claims for negligence against Defendant Ray, arguing a Defendant cannot be liable for assault and battery (intentional torts) in addition to negligence. [R. 6-1 at 19-21.] The Plaintiffs agree and "have no objection" to dismissal of their negligence claims against Defendant Ray. Accordingly, the Court will dismiss Count II as to Defendant Ray.

The Plaintiffs' indication that they would not object to dismissing their claims against Defendant Quire without prejudice, and with the ability to conduct discovery on and later reinstate the claim, seems to apply to their negligence claim against him as well. [R. 7 at 6.] As explained above, this is not a viable approach so the Court will not dismiss this claim without prejudice.

The Plaintiffs appear to argue Quire negligently hired Ray, and that Defendants Quire and Doty negligently supervised him. An employer is liable for negligent hiring when "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an

11

unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley v. Flor-Shin*, 964 S.W.2d 438, 442 (Ky. 2009)). Kentucky also recognizes a cause of action for negligent supervision, which is comprised of the traditional common-law negligence elements. *See Cummins v. City of Augusta*, 2013 Ky. App. Unpub. LEXIS 784, *9 (Ky. Ct. App. Sept. 27, 2013). Duty is established in that context by showing the employer "knew or had reason to know of the risk that the employment created." *Id.* (quoting *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003)).

Both claims center around the Defendants' knowledge of the risk posed by hiring, employing, and equipping Defendant Ray. The complaint alleges Defendants Quire and Doty knew Defendant Ray "overreacted to events, was violent, used unnecessary and excessive force, violated FCSO policies, and unnecessarily injured Franklin County residents." [R. 1 at 5.] It is plausible that if such knowledge is proven, the Plaintiffs will be able to state a negligent supervision claim against Doty and Quire, and a negligent hiring claim against Quire. If this allegation is true, the Defendants would have owed the Plaintiffs a duty by knowing Ray was unfit for his role. By allowing Defendant Ray to serve as an officer and engage with the Plaintiffs, Doty and Quire may have breached that duty, causing injury through Ray's ability to use excessive force against them. Further, Quire would have known Ray was unfit and, by allowing him to serve as an officer and engage with the public, posed an unreasonable risk of harm to the Plaintiffs. *See Oakley*, 964 S.W.2d at 442. Accepting the complaint's allegations as true, the Plaintiffs have stated plausible negligence claims against Quire and Doty. The complaint does not establish that these Defendants' employment and supervision of Ray was in good faith, so the claim will not be dismissed based on state qualified immunity.

**b**

Count III asserts that Defendant Ray committed assault and battery against the Plaintiffs. "Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). The Plaintiffs allege Ray "yanked" them out of the vehicle and "slung" them to the ground. This conduct, if proven, would clearly constitute assault and battery. Such conduct would be an intentional act, touching the Plaintiffs, which was unwanted. The assault claim would additionally require the Plaintiffs perceived that Ray was about to touch them. Construing the complaint in their favor, the Court can reasonably conclude that the Plaintiffs, who were clearly aware of Ray's presence given their behavior, knew he was present and saw his actions leading up to the offensive touching.

It is telling that the Defendants do not argue Ray's conduct does not constitute assault and battery. Rather, they claim that he is protected by qualified immunity because his conduct was in good faith, as he did not know the Plaintiffs did not pose a threat. [R. 6-1 at 15-16.] Conduct is in bad faith, and therefore not protected by qualified immunity, if it is objectively unreasonable, willful, or malicious. *Yanero*, 65 S.W.3d at 523. Evidence of "gratuitous" force establishes bad faith and "forcibly pulling a compliant, non-resisting suspect from his car and slamming him against it with enough force to cause" injuries is gratuitous. *Folks v. Petitt*, 676 Fed. App'x 567, 572 (6th Cir. 2017). The Plaintiffs alleged they were compliant and Ray pulled them out of the vehicle and threw them to the ground, causing injury. These allegations support a plausible claim of gratuitous force, so the complaint does not establish the existence of qualified immunity. The Plaintiffs' assault and battery claims against Defendant Ray survive the Defendants' Motion to Dismiss.

c

Finally, Count IV claims Defendants Quire and Doty committed "abuse of public office" by their "sham investigation" into Defendant Ray's misconduct. The Defendants argue this is not a tort recognized in Kentucky, so the Plaintiffs have not stated a cognizable claim. [R. 6-1 at 16-18.] KRS § 446.070 allows someone injured by a violation of a statute to recover damages. This codifies the common law concept of negligence *per se*. *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000). Official misconduct is a criminal offense pursuant to KRS § 522.020 and 522.030. A public servant commits official misconduct if he:

> (a) Commits an act relating to his office which constitutes an unauthorized exercise of his official functions; or
> (b) Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or
> (c) Violates any statute or lawfully adopted rule or regulation relating to his office.

*Id.* The Defendants cite to a case from the Western District in which the court stated "neither the Kentucky Revised Statutes nor Kentucky case law recognize a corresponding tort law claim for 'official misconduct.'" *Madden v. Calvert*, 1:16-cv-P147-GNS, 2017 U.S. Dist. LEXIS 160830, at *16-17 (W.D. Ky. Sept. 29, 2017). However, there is no suggestion that the plaintiff in that matter brought their cause of action for official misconduct pursuant to KRS § 446.070. A few years prior, a Western District court allowed an official misconduct claim based on an officer's alleged assault of the plaintiff to proceed beyond summary judgment, affirming the existence of such a claim. *Sherzinger v. Bolton et al.*, 3:11-cv-11-H, 2013 U.S. Dist. LEXIS 86568, at *26-28 (W.D. Ky. June 19, 2013); *see also Wright v. Beard*, 1:14-cv-90-JHM, 2014 U.S. Dist. LEXIS 203163, at *7-8 (W.D. Ky. Oct. 24, 2014). It appears that KRS § 446.070 does provide a civil remedy for conduct in violation of KRS § 522.010, *et seq*.

14

But even if such a civil remedy does exist, the complaint is insufficient to state a claim for relief for official misconduct. The only assertion relating to this claim is that Defendants Quire and Doty conducted a "sham investigation" of Defendant Ray's conduct during the incident. [R. 1 at 6.] The only additional details provided are that the investigation absolved Ray of consequences and that the Plaintiffs believe this investigation was intended to "provide Ray a defense to this civil action." *Id.* at 5. Not a single fact is provided to explain what occurred during the investigation and why it was insufficient. Stating the investigation was a "sham" is a conclusory statement and fails to state a plausible claim. *Twombly*, 550 U.S. at 557. Accordingly, the Court will dismiss the Plaintiffs' official misconduct claim.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Defendants' Motion to Dismiss **[R. 6]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count II of the Defendants' Complaint **[R. 1]** is **DISMISSED** as to Defendant Ray;

2. Count IV of the Defendants' Complaint **[R. 1]** is **DISMISSED**; and

3. The Motion to Dismiss is denied in all other respects.

This the 28th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge